61 F.3d 17
 95 Cal. Daily Op. Serv. 5839, 95 Daily Journal
D.A.R. 9981
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver;
American Diversified Savings Bank; ADC Financial
Corp.; American Diversified Wells Park
III, et al., Plaintiffs-Appellants,
v.
O'MELVENY & MYERS, Defendant-Appellee.
 No. 90-55769.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 25, 1995.
Decided July 26, 1995.
 
 Jerome A. Madden, F.D.I.C., Washington, DC; Sharon L. O'Grady, Holman & O'Grady, San Francisco, CA, for plaintiffs-appellants.
 Gregory R. Smith, Irell & Manella, Los Angeles, CA, for defendant-appellee.
 Stephen M. Shapiro, Mayer, Brown & Platt, Chicago, IL, for amicus Business and Financial Lawyers in Support of the defendant-appellee.
 On Remand from the United States Supreme Court.
 Before POOLE, KOZINSKI and LEAVY, Circuit Judges.
 PER CURIAM.
 
 
 1
 We are surprised to see this case back from the Supreme Court, having previously disposed of it largely on state law grounds--or so we thought. The Court didn't see it that way, suspecting us of having overlooked Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), by "adopting a special federal common-law rule divesting States of authority over the entire law of imputation." O'Melveny & Myers v. FDIC, --- U.S. ----, ----, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994). Had we done such a thing, we would deserve to be harshly judged, but we did not. Nothing in Section III of our earlier opinion, dealing with O'Melveny's duty of care, 969 F.2d 744, suggests we were applying federal law. To the contrary, we rejected one of O'Melveny's arguments because "[n]o California cases advise us of an exception to the general rule that a lawyer has to act competently to avoid public harm when he learns that his is a dishonest client." Id. at 748 (emphasis added).
 
 
 2
 Nor did we apply federal law in Part IV.A., where we held that the perfidy of ADSB's principals does not estop the FDIC from bringing a claim against O'Melveny. The chief cases we relied on for this conclusion also come from California. Merco Constr. Eng'rs v. Municipal Court, 21 Cal.3d 724, 147 Cal.Rptr. 631, 581 P.2d 636 (1978); Meyer v. Glenmoor Homes, 246 Cal.App.2d 242, 54 Cal.Rptr. 786 (1967). We did cite some federal cases, but--as the Supreme Court noted--these rely largely on state law. --- U.S. at ----, 114 S.Ct. at 2053. We do know the difference between controlling and persuasive authority.[1]
 
 
 3
 In the only portion of our opinion where we did rely on federal law, we said so quite clearly and explained our reasons: Since the FDIC is a federal instrumentality, long-standing case law then stood for the proposition that the application of defenses against the FDIC were governed by federal law. See 969 F.2d at 751 n. 9 (citing D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); FDIC v. Bank of San Francisco, 817 F.2d 1395 (9th Cir.1987); FDIC v. Mmahat, 907 F.2d 546 (5th Cir.1990), cert. denied, 499 U.S. 936, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991); FDIC v. Gulf Life Ins. Co., 737 F.2d 1513 (11th Cir.1984)). These cases have now been overruled by the Supreme Court, so we must reconsider this portion of the opinion.[2] We thus adopt our earlier opinion in haec verba, with the exception of Part IV.B., which dealt with whether the FDIC enjoys any rights or defenses not available to the entity it replaces. It is to that issue we now turn.
 
 
 4
 While we find it a closer question under state law than under federal law, we nevertheless conclude that the FDIC is not barred by certain equitable defenses O'Melveny could have raised against ADSB. We recognize that, in general, "[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts ... and any defense good against the original party is good against the receiver." Allen v. Ramsay, 179 Cal.App.2d 843, 854, 4 Cal.Rptr. 575 (1960). However, this rule is subject to exceptions; defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver. See Camerer v. California Sav. & Commercial Bank, 4 Cal.2d 159, 170-71, 48 P.2d 39 (1935). While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law. Moreover, when a party is denied a defense under such circumstances, the opposing party enjoys a windfall. This is justifiable as against the wrongdoer himself, not against the wrongdoer's innocent creditors. As we noted in our earlier opinion:
 
 
 5
 A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes. It was neither a party to the original inequitable conduct nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable defects. This places the receiver in stark contrast to the normal successor in interest who voluntarily purchases a bank or its assets and can adjust the purchase price for the diminished value of the bank's assets due to their associated equitable defenses. In such cases, the bank receives less consideration for its assets because of its inequitable conduct, thus bearing the cost of its own wrong.
 
 
 6
 Also significant is the fact that the receiver becomes the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct. That scheme would be frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets. See Gulf Life, 737 F.2d at 1517; cf. Langley v. FDIC, 484 U.S. 86, 91-92, 108 S.Ct. 396, 401-02, 98 L.Ed.2d 340 (1987).
 
 
 7
 In light of these considerations, we conclude that the equities between a party asserting an equitable defense and a bank are at such variance with the equities between the party and a receiver of the bank that equitable defenses good against the bank should not be available against the receiver. To hold otherwise would be to elevate form over substance--something courts sitting in equity traditionally will not do. See Drexel [v. Berney ], 122 U.S. [241,] 254, 7 S.Ct. [1200,] 1205, [30 L.Ed. 1219 (1887) ]. Of course, it does not necessarily follow that equitable defenses can never be asserted against ... a receiver; we hold only that the bank's inequitable conduct is not imputed to [a receiver].
 
 
 8
 969 F.2d at 751-52.
 
 Conclusion
 
 9
 Having reconsidered the case as instructed by the Supreme Court, we reach the same conclusion as we did last time. We therefore direct the parties and the district court to our earlier opinion, 969 F.2d at 752, for instructions on how to proceed.
 
 
 10
 REVERSED AND REMANDED.
 
 
 
 [1]
 We also cited Holland v. Arthur Andersen & Co., 127 Ill.App.3d 854, 82 Ill.Dec. 885, 469 N.E.2d 419 (1984), but the Supreme Court did not suspect us of applying Illinois law
 
 
 [2]
 Nothing has happened in the case law of California (which counsel have ably briefed on remand) to change our analysis as to the other portions of the opinion. O'Melveny and amicus rely heavily on Bily v. Arthur Young & Co., 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992), but that case is beside the point, as it addresses a professional's duty to a party that was not the client and did not acquire the client's interest. Here, the FDIC stepped into the shoes of the client, to whom O'Melveny clearly owed a duty of care