In re PLAZA MORTGAGE AND
FINANCE CORPORATION,
Debtor.

Neil C. GORDON, Trustee in Bankruptcy
of the Estate of Plaza Mortgage and
Finance Corporation, Plaintiff,

v.

Martin BASROON; Joseph Girardot; Leslie Johnson; Fred Kaunitz; Nathan Pasha; Ferraro, Wood & Company f/k/a Ferraro, Gensib and Wood f/k/a Saltiel, Basroon, Ferraro, Gensib and Wood f/k/a Saltiel, Basroon and Ferraro; Michael R. Ferraro; Carl D. Gensib; James M. Wood; Rhea Basroon; Ida Basroon; Jody Basroon; and Andrew Basroon, Defendants.

Bankruptcy No. A93–65102–JB.
Adv. No. 94–6068.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 28, 1995.

Larry H. Chesin, Kirwan, Parks, Chesin & Pemar, Atlanta, GA, for plaintiff.

Robert M. Finlayson, II, Mozley, Finlayson & Loggins, Atlanta, GA, for defendants.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

In this case, the Court must decide whether the trustee has standing to sue the debtor's former accountants for malpractice and fraud where the debtor was operated as a "Ponzi" or pyramid scheme and where the debtor's president and one of its shareholders was a partner in the defendant accounting firms. This case also involves the issue of whether the trustee's claims are barred by the doctrine of *in pari delicto* as a result of the wrongful acts of the debtor.

Procedurally, this adversary proceeding is before the Court on two motions filed by Defendants Ferraro, Wood & Company, James M. Wood, Carl D. Gensib, and Michael R. Ferraro (the "Accountant Defendants" or "defendants"):

(1) a motion styled "Second Motion to Dismiss This Adversary Proceeding and/or Motion for Summary Judgment" (the "Standing Motion"); and

(2) a motion styled "Partial Summary Judgment on Issue of Statutes of Limitations" (the "Statute of Limitations Motion").

The main bankruptcy case was commenced by an involuntary petition on April 5, 1993. At the time the petition was filed, a state receivership action was pending in the Superior Court of Fulton County. After a contested hearing, this Court entered an Order for relief under Chapter 11 on June 2, 1993 and appointed a Chapter 11 Trustee.

The Debtor Plaza Mortgage and Finance Corporation ("Plaza") was, prior to the commencement of the bankruptcy case, engaged in the business of providing mortgage financing to higher than normal credit risk borrowers. For purposes of the pending motions, the parties do not dispute that Plaza obtained the funds to make its loans from investors, to whom it promised very high rates of return. After Defendant Martin Basroon became president of Plaza in September of 1988, Plaza was run as a largely fraudulent enterprise, organized as a Ponzi scheme.[1] Plaza remained in business not on the basis of earnings from loans made to borrowers, but on the basis of money received from new investors.

In this adversary proceeding, the trustee has asserted claims against a number of defendants including Plaza's former president, Martin Basroon (both in his capacity as an officer of Plaza and in his capacity as a partner in the defendant accounting firms which performed work for Plaza), Plaza's former attorney, a former employee of Plaza, one of Plaza's founding shareholders, the accounting firms used by Plaza, and the partners of those accounting firms.[2] All of the defendants are alleged to have participated with the debtor in the Ponzi scheme.

The complaint contains many allegations as to all defendants and separate allegations and claims as to each defendant. With respect to the Accountant Defendants, the trustee contends that Plaza suffered injury as a result of the accountants' negligence and as a result of Basroon's fraud as an accountant. The trustee has alleged, *inter alia*, that the accountants were hopelessly negligent in failing to implement any controls or supervisory procedures to prevent mistakes or fraud.

---

1. A description of the term "Ponzi scheme" and the historical background of the term are fully discussed in *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. 985, 994 n. 12 (Bankr.D.Utah 1984), *aff'd in part, rev'd in part, Merrill v. Dietz (In re Universal Clearing House Co.)*, 62 B.R. 118 (D.Utah 1986).

2. The Court has already entered a judgment as to liability on all claims asserted in the complaint against Mr. Basroon.

In the Standing Motion, the Accountant Defendants argue that the trustee lacks any standing to bring the claims asserted against the Accountant Defendants, as these claims really belong to the investors. Alternatively, defendants argue that if the trustee has any claims, they are barred as a matter of law by the doctrine of *in pari delicto*.

### I. The Standing Argument

■ The case law is well-established that a trustee in bankruptcy lacks standing to assert claims on behalf of investors/creditors of a debtor as opposed to claims belonging to the debtor. *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *E.F. Hutton & Co. Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990); *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988). It is also clear that causes of action belonging to the debtor are included as property of the estate under 11 U.S.C. § 541(a)(1) and may be asserted by the trustee. Here, the trustee maintains that his claims are asserted on behalf of the debtor and are for injuries to the debtor due to the accountants' negligence and Defendant Martin Basroon's fraud. Defendants respond by arguing that the claims are "really" brought on behalf of the investors/creditors, citing a number of cases dismissing claims asserted by trustees against alleged participants in Ponzi schemes.

■ Standing is jurisdictional in nature, and whether plaintiff has standing is a threshold inquiry. *E.F. Hutton*, 901 F.2d at 983. The cases cited by Defendants show that it is difficult for a trustee in bankruptcy to maintain a claim against a third party who participated with the debtor in defrauding creditors. The starting point for analyzing a trustee's standing here is the 1972 Supreme Court case of *Caplin v. Marine Midland Grace Trust Co.* In *Caplin*, the Supreme Court held that a trustee in a reorganization under Chapter X of the Bankruptcy Act did not have standing to assert, on behalf of persons holding debentures issued by the debtor, claims of misconduct by an indenture trustee. *Caplin* was a five-to-four decision and the Court noted that the issue was "a difficult one" and has caused "even the most able jurists to disagree." *Caplin*, 406 U.S. at

421–22, 92 S.Ct. at 1682. Deciding that the trustee in a reorganization lacked standing, the Court found that nowhere in the statutory scheme of the Bankruptcy Act or the Trust Indenture Act of 1939 was there a suggestion that the trustee in a reorganization was to assume the responsibility of suing third parties on behalf of debenture holders. Second, the trustee in *Caplin* did not argue that the debtor had any claim against the indenture trustee and the "conspicuous silence on this point is a tacit admission that no such claim could be made." *Id.* at 429, 92 S.Ct. at 1686. Third, the Court held that a suit by the trustee may be inconsistent with independent actions by debenture holders.

In *Williams* and *E.F. Hutton*, the Ninth and Eleventh Circuits found the trustees in bankruptcy lacked standing to sue third parties who participated with the debtors in Ponzi schemes. Both courts found it significant that when Congress rewrote the bankruptcy laws in 1978, it considered and rejected a provision which would have overruled *Caplin*. However, in both of these cases, the trustees were clearly asserting claims belonging to creditors, and not claims belonging to the debtor. In *Williams*, the trustee had taken an assignment of creditors' claims, and the court found the debtor had no claim of its own against the defendant bank. In *E.F. Hutton*, the trustee conceded he was asserting claims of customer creditors rather than the debtor entity. The court also stated: "We emphasize that our holding is restricted to the specific facts in this case." *E.F. Hutton*, 901 F.2d at 985.

Defendants rely on *Feltman v. Prudential Bache Sec.*, 122 B.R. 466 (S.D.Fla.1990), a case in which the trustee alleged that the debtor had been injured, but the court still dismissed the trustee's claims for lack of standing. The rationale in *Feltman*, however, is not particularly compelling here. There, the Chapter 11 trustee and the unsecured creditors committee of two corporate debtors sued a brokerage house, bankers, and accountants that defrauded investors in a massive embezzlement scheme. The trustee alleged that the debtors were injured by defendants' fraud and by their allowing the debtor to continue in business past the point

of insolvency.[3] Holding that the trustee could not assert claims based on injury to the debtor corporations, the court found the debtor corporations could not be injured, because they were "sham" corporations. Thus, the court concluded "any alleged injury to the debtors is as illusory as was their corporate identity." *Id.* at 474. Here, there is no allegation that Plaza was a sham corporation. Furthermore, the result is troublesome if it means that the bankruptcy process is of no utility for creditors of Ponzi scheme debtors. Under the *Feltman* reasoning, in such a case the trustee's hands are tied and each creditor is on his or her own.

The other reason given in *Feltman* for dismissing the trustee's claims was that it would be inequitable for the trustee to recover against these defendants. The court stated that defrauded creditors would have their own claims against the same defendants and if the trustee sued for damages, this would deprive the creditors of standing to raise those claims. *Id.* The court's rationale is hard to follow. If the trustee and the creditors have different claims, and if the trustee recovers and makes a distribution to creditors, this does not deprive the creditors of standing to bring their claims. It only reduces their damage claim to the extent they have received a distribution from the estate. *See Drabkin v. L & L Constr. Assoc. (In re Latin Inv. Corp.),* 168 B.R. 1, 6 (Bankr. D.D.C.1993).

Defendants also cite *Begier v. Price Waterhouse,* 81 B.R. 303 (E.D.Pa.1987), but that case does not support defendants' position. There, the court dismissed one count of a complaint brought by a Chapter 11 trustee against the debtor's former accountant. However, the dismissed count asserted claims on behalf of creditors. Two counts of the complaint remained in the case, and these counts involved claims that the defendant accounting firm breached its contract with the debtor and negligently performed the accounting services causing the debtor to suffer financial loss.

The recent case of *Hirsch v. Arthur Andersen & Co.,* 178 B.R. 40 (D.Conn.1994), points out why trustees in Ponzi cases often have trouble pleading claims on behalf of the estate distinct from the claims of defrauded creditors. The difficulty arises in the description and measurement of damages. The court in *Hirsch* stated: "In the standing context, the concept of damage to the debtors is a difficult one to understand, and one that has been applied inconsistently by the courts." *Id.* at 43. In *Hirsch,* the court dismissed the Chapter 11 trustee's claims against certain law firms and accountants that allegedly participated with the debtors in a Ponzi scheme. Like the defendants in the instant case, the defendants in *Hirsch* argued that the trustee lacked standing because the claims "really" belonged to the creditors and that any claims the debtors might assert were barred by virtue of their own participation in the fraudulent scheme. The court found the trustee lacked standing largely because of the way he alleged damages to the debtor. The bulk of the complaint alleged a scheme to defraud creditors and the only damage to the debtor was the extent of the unpaid obligations of the debtors to the creditors. It was fatal that the trustee had not alleged any distinct way in which the debtors were damaged by the asserted wrongdoing of the defendants. The court stated that if the facts of the complaint suggest that the claims actually belong to the creditors, a blanket allegation of damage to the debtors will not confer standing on the trustee.

Before discussing cases in which the courts have found standing, it is important to note a fallacy in the argument that the claims asserted "really" belong to the investors/creditors. This argument often comes from the mistaken notion that the creditors are the ones who will receive the money anyway, so why not let them pursue the wrongdoers themselves and do away with

---

**3.** In *Feltman,* the trustee also tried to assert claims on behalf of specific creditors and on behalf of creditors in general. Following *Caplin,* the court found that the trustee had no standing to raise claims based on specific creditors' inter-

ests. Regarding the allegations that the claims were brought on behalf of all creditors, the court found that plaintiffs failed to show such claims would belong to creditors in general outside of bankruptcy.

the trustee.[4] This argument misunderstands the nature of bankruptcy and the role of the trustee in bankruptcy. Bankruptcy is a collective debt collection device. Indeed, the trustee's job is to investigate the debtor's financial affairs, liquidate assets, pursue the debtor's causes of action, and acquire assets through the trustee's avoiding powers in order to make a distribution to creditors. "The concept of a trustee in bankruptcy is that of a creditor representative whose single effort will replace that of multiple and often wasteful and competitive efforts of individual creditors." 1 Daniel R. Cowans et al., *Cowans Bankruptcy Law and Practice* § 2.7, at 72 (1986 ed.). To find that the trustee has no standing to pursue causes of action belonging to the debtor because the recovery would only benefit the creditors is an absurd argument, given the fact that the trustee's goal is to make a distribution to creditors.

In cases in which the courts have held the trustee had standing, the courts have read the complaint to allege a claim belonging to the debtor or an injury to the debtor conceptually distinct from the injury to defrauded investors or creditors. In *Regan v. Vinick & Young (In re Rare Coin Galleries of America, Inc.)*, 862 F.2d 896 (1st Cir.1988), the court held that the trustee had standing to bring an action against accountants. The debtor bought, sold, and invested in rare coins for its customers, and the principals misappropriated assets leading the firm into bankruptcy. The trustee sued the accountant and auditor for certifying reports which summarized rare coin transactions. The complaint alleged negligence, breach of contract, negligent misrepresentation, and unfair and deceptive acts or practices. The damages sought included the cost of the accountant's services, the misappropriation of assets by the debtor's principals, certain commissions paid by the debtor, the costs of bankruptcy, and the cost to the estate of an $11.8 million claim by the Federal Trade Commission on behalf of public consumer creditors.

Defendants contended that the claims filed by the trustee belonged only to the creditors, but the court examined the complaint and found otherwise. The court stated:

> In each of the four counts set forth in the complaint the trustee alleges damage to the *debtor*. The four counts (negligence, breach of contract, negligent misrepresentation and the statutory claim for unfair or deceptive practices) all clearly could have been asserted by the debtor, RCG. The trustee steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of actions, which become property of the estate. The confusion may stem from the trustee's repeated emphasis upon the assertions that the accountant's wrongdoing caused RCG's customers to lose money. This emphasis on the customers' claims appears to result from the $11.8 million claim filed on their behalf against the estate (the largest against the debtor) and from the concern that the estate may be held jointly and severally liable with the accountant in any eventual actions commenced by the customers. *It is clear that, despite the emphasis on the customers' claims, the trustee is asserting claims that belong to the estate.*

*Id.* at 900–01 (emphasis added) (footnote omitted) (citation omitted).

The recent Seventh Circuit case of *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), not cited by the parties, is very helpful in analyzing standing. There, a receiver under Illinois law for corporations owned by a Ponzi scheme principal brought fraudulent conveyance actions against a Ponzi scheme investor, the principal's former spouse, and religious organizations that received funds from the corporations in receivership. The court of appeals held that the receiver had standing to assert the fraudulent conveyance claims. The defendants argued that the receiver was not really suing on behalf of the entity in receivership, but was suing on be-

---

4. This argument seems to have been accepted in *Williams* and *Hirsch*. In *Williams*, the court said that "the investors plainly remain the real parties in interest" in the trustee's suit because the estate will only recoup administrative costs and investor-assignors will receive the bulk of the recovery. *Williams*, 859 F.2d at 666. In *Hirsch*, the court stated that since the trustee alleged that the injury to the debtors was coextensive with the injury to the creditors, "the trustee has done no more than cast the debtors as collection agents for the creditors." *Hirsch*, 178 B.R. at 44.

half of the investors who had purchased interests in the corporations. Citing *Caplin,* the defendants argued that a receiver does not have standing to sue on behalf of the creditors of the entity in receivership and that, like a trustee in bankruptcy, an equity receiver may sue only to redress injuries to the entity in receivership. The defendants asked: how could the allegedly fraudulent conveyances hurt the instruments through which the Ponzi scheme was operated? Judge Posner provided the following answer:

> The corporations, Douglas's robotic tools, were nevertheless in the eyes of the law separate legal entities with rights and duties. They received money from unsuspecting, if perhaps greedy and foolish, investors. That money should have been used for the stated purpose of the corporations' sale of interests in the limited partnerships, which was to trade commodities....
>
> The three sets of transfers removed assets from the corporations for an unauthorized purpose and by doing so injured the corporations.

*Scholes,* 56 F.3d at 754.

Thus, it is the removal of assets that damaged the debtor, and the trustee has standing to sue for this type of injury.

Measuring the injury to the debtor by the money going out (looting, embezzlement, waste, etc.) rather than by the money coming in (funds raised by defrauding investors) was significant in *Drabkin,* 168 B.R. at 1. There, the court found the trustee had standing to assert claims of fraud and conspiracy against defendants who helped the debtor's principals breach duties to the debtor and bring about the demise of the debtor. The court interpreted the claims as claims for fraud against the debtor based on misuse of corporate funds. The court held the trustee alleged a viable cause of action to the extent intentional mismanagement and misuse allowed defendants and the debtor's principals to loot the corporation of its assets. The damages would include "damages from the

looting itself as well as damages inflicted in perpetuating the debtor's existence past the point of insolvency in order to loot." *Id.* at 5.

Now we turn to the complaint in this case to determine if the trustee has alleged claims belonging to the debtor and/or injuries to the debtor as opposed to injuries to defrauded investors. The specific claims against the Accountant Defendants are set forth in ¶¶ 76–85 of the Complaint. The particular wrongful acts alleged are that the accounting firm prepared false and materially misleading financial statements from 1987 through 1992; that the accounting firm prepared false tax returns based on these statements; that the accounting firm systematically departed from generally accepted accounting principles in preparing financial statements; that the accounting firm failed to alert the management, board of directors, or other parties of known errors and omissions in the financial statements it compiled; and that the accounting firm negligently concealed Plaza's insolvency from Plaza's board of directors and shareholders from 1989 through 1993. The claims against the Accountant Defendants also incorporate by reference the alleged claims against Basroon. In pertinent part, the trustee alleges that Basroon engaged in acts of self-dealing with Plaza through a corporation known as Barob, Inc., which served to drain funds from Plaza to the detriment of Plaza.

In addition to the separate claims against the Accountant Defendants, the Complaint alleges a set of claims against all defendants for a fraudulent conspiracy.[5] (Compl. ¶¶ 86–91.) The allegations are that all the defendants participated in a conspiracy designed to maintain the Ponzi scheme and to promote each defendant's personal financial or business interest. As a result of these activities, Plaza incurred millions of dollars of liabilities to investors which it could not repay.

The claims as pled certainly look like claims belonging to the debtor rather than creditors. However, the damages alleged are vague. The Complaint simply alleges

---

**5.** The Complaint also contains general claims against all defendants for fraudulent conveyances. (Compl. ¶¶ 92–94.) This claim states that each defendant has transferred property in order to avoid liabilities to the trustee. The parties have not addressed this claim in the two motions.

that Basroon's actions and the accounting firm's actions drove Plaza into bankruptcy and the damages exceed $9 million. In response to an interrogatory, the trustee stated that his overall damage could be calculated by ascertaining the difference between the amount invested in Plaza and the value of the estate on the date the bankruptcy petition was filed. The Accountant Defendants argue that if the trustee's damages equal the total of creditor claims in this case, then the claims belong to the creditors and this adversary proceeding should be dismissed. However, the trustee contends this was a preliminary damage analysis and that other damage analyses may be employed, depending on the particular defendant. He points out that the response to his interrogatory stated that it was not a final statement of damages claimed as to any party and that as to the Accountant Defendants, damages would include the fees paid to the accounting firm.

At this stage of the proceeding, it would be unfair to dismiss the trustee's claims, because he has done a preliminary damage analysis based on the difference between the amount invested and the assets on hand. The allegations in the Complaint suggest that damages would be better calculated by reference to monies improperly used by Basroon, accounting fees paid, and other accepted methods of measuring damages suffered by debtors.

█ In the form pretrial order used in this district, a plaintiff is required to specify damages. Rather than wait for the preparation of the full Pretrial Order involving many parties, it makes sense at this juncture to have the plaintiff file a Statement of Damages Sought Against the Accountant Defendants. Thus, plaintiff is directed to file a pleading on or before October 10, 1995, containing a separate statement for each item of damage claimed against the Accountant Defendants, and a brief description of the item of damage, the dollar amount claimed, and citation to the law, rule, regulation, or any decision authorizing recovery for that particular item of damage. In specifying damages, counsel should consider the message from the case law that damages to the debtor are best measured by outgoing money rather than by incoming money.

In conclusion, the trustee does have standing to assert the claims against the Accountant Defendants. The claims of malpractice and fraud on the debtor by Basroon as an accountant belong to the debtor. However, the method of measuring damages will need to be refined, and the trustee will be given an opportunity to clarify the elements of the damages claimed.

This result is not inconsistent with *Caplin, Hadley* and *Williams.* The trustees in those cases did not assert that any claim existed on behalf of the debtors, and the court in *E.F. Hutton* emphasized that its holding was restricted to the specific facts of that case. In addition, one of the courts' concerns is duplicative litigation, and the pendency of other lawsuits by creditors has been a factor in the decision to dismiss the trustee's claims. In *E.F. Hutton,* the court found duplicative litigation had already occurred, with aspects of the litigation pending in three separate courts. *E.F. Hutton,* 901 F.2d at 987. In *Feltman,* the court took judicial notice that a complaint by creditors was pending in state court which duplicated some of the claims in the trustee's suit. *Feltman,* 122 B.R. at 474 n. 11. In *Hirsch,* the investors had already asserted actions against the defendants. *Hirsch,* 178 B.R. at 44. In the case at bar, counsel have not advised the Court of any pending duplicative litigation by creditors against these Accountant Defendants.

█ Before turning to the *in pari delicto* argument, the Court notes there are some lessons to be learned from the standing cases regarding how a trustee in bankruptcy should plead a claim against a third-party participant in a Ponzi scheme in order to survive a motion to dismiss. A trustee should be careful to plead claims belonging to the debtor and injury to the debtor. A trustee should be careful not to plead for a recovery based on any injury to the investors/creditors, even though the fraud on the investors will be a part of the background allegations. In alleging background facts, trustees often explain how investors have been defrauded. These background facts, however, should not be confused with the

claims of the trustee. A trustee should be careful not to plead damages as an amount equal to the funds invested in the debtor's Ponzi scheme, but should measure damages based on funds improperly paid out by the debtor.

Finally, the Statute of Limitations Motion appears to be mooted in large part by this ruling. In that Motion, the Accountant Defendants are generally seeking a declaration that the trustee is precluded from asserting as an element of damages any of the funds invested in Plaza prior to April 5, 1989 or any obligations to investors that Plaza incurred prior to April 5, 1989. Based on the above reasoning pertaining to the Standing Motion, damages to the debtor will not be calculated based on funds invested.

## II. The *In Pari Delicto* Argument

The other ground for the Accountant Defendants' Standing Motion is the argument that the trustee's claims are barred as a matter of law by the doctrine of *in pari delicto*. This argument raises more difficult factual and legal issues that are not fully developed by the present record.

█ First, would the doctrine of *in pari delicto* apply to bar the debtor Plaza from suing the Accountant Defendants outside of bankruptcy? The answer to this question depends on whether the acts and knowledge of Martin Basroon are imputed to the debtor Plaza. The trustee argues that the adverse interest exception applies here and that Basroon's knowledge should not be imputed to the corporation. The Accountant Defendants respond that the sole representative doctrine applies to prevent the trustee from asserting the adverse interest doctrine.[6]

While the question of whether Basroon's knowledge and actions can be imputed to Plaza is a question of law, the proper application of these doctrines requires a close examination of the facts. The Court cannot determine from the current record which facts pertaining to these legal issues are disputed and which facts are undisputed.

The initial Statement of Material Facts presented with the Standing Motion did not address any of the facts pertinent to the applicability of either the adverse interest exception or the sole representative doctrine. Such facts include, but are not limited to, Plaza's ownership and the other shareholders' knowledge, involvement, and acquiescence. Accordingly, the Court has requested counsel to confer and submit a joint statement of which facts relevant to these issues are undisputed and which facts are disputed.

█ There is also the important question of which state law of imputation applies. State law, not federal law, governs the imputation of knowledge to corporate victims of alleged negligence. *O'Melveny & Myers v. FDIC*, —— U.S. ——, ——, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994). The Court cannot tell from the briefs what the parties contend regarding which state's laws apply. The trustee's brief contains footnotes suggesting that perhaps Florida law or New Jersey law should apply, but there is no discussion of what the law of those states is regarding imputation. In the defendants' reply brief, they take the position that the law of Georgia should apply "to the tort issues," but they state that the issue of which state law applies is academic. In response, the trustee disputes whether the choice of law

---

**6.** The adverse interest exception is an exception to the general rule that a corporation is charged with constructive knowledge of all material facts of which its officers or agents acquire knowledge. Where an officer or agent is engaged in a scheme to defraud a corporation, "the presumption that knowledge held by the agent was disclosed to the [corporation] fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *CEPA Consulting, Ltd. v. King Main Hurdman (In re Wedtech Corp.)*, 138 B.R. 5, 9 (S.D.N.Y.1992) (quoting *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 497 N.Y.S.2d 898, 488 N.E.2d 828, 829 (N.Y.1985)); *see also* 3 William

M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 819 (perm.ed.1986).

The "sole representative" or "sole actor" doctrine is an exception to the adverse interest exception. In cases where the business or transaction in question is entrusted to an officer or agent of the corporation as its sole representative, the adverse interest exception does not apply and the knowledge of the officer or agent is imputable to the corporation. The reason for the rule is that, where the officer in question is the sole representative of that corporation, there is no one to whom to impart his knowledge and no one from whom he may conceal it. Fletcher, *supra*, § 827.

issue is academic and again mentions that it could be New Jersey, Georgia, or Florida.

Counsel need to determine if there is a choice of law issue to decide, i.e., whether they agree or disagree on which state law governs the *in pari delicto* and imputation of knowledge issues. If counsel agree on which state law applies, they need to submit briefs on the law of that state as it applies to the facts. If counsel disagree on which state law governs, they need to submit briefs on which state law should govern and why and what the law of that state is as it applies to these facts.

Assuming that the debtor's claims would be barred by *in pari delicto* outside of bankruptcy under some applicable state law, the more interesting (and possibly dispositive) question is whether the *in pari delicto* defense applies to the trustee in bankruptcy here. Again, the briefs filed do not address this question adequately. The briefs do not consider the legal principles established by the Supreme Court case of *O'Melveny & Myers v. FDIC* or the pertinent state law.

In *O'Melveny*, the issue was whether, in a suit by the Federal Deposit Insurance Corporation ("FDIC") as receiver of a federally-insured savings and loan ("S & L"), it is a federal-law or state-law rule of decision that governs the tort liability of attorneys who provided services to the S & L. A unanimous Supreme Court concluded that a state-law rule of decision governs.

The FDIC had sued the lawyers for the S & L, alleging professional negligence and breach of fiduciary duty. The defendants argued that knowledge of the conduct of the controlling officers must be imputed to the S & L and hence to the FDIC which, as receiver, stood in the shoes of the S & L. The FDIC contended that even though the causes of action were created under California law, federal common law determined whether knowledge by officers of the S & L would be imputed to the FDIC when it sues as receiver. The Court examined the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") and in particular 12 U.S.C. § 1821(d)(2)(A)(i), which provides that the FDIC succeeds to all the rights, title, powers, and privileges of the insured deposi-

tory institution. The Court stated that in litigation by the FDIC asserting the claims of the S & L, any defense good against the original party is good against the receiver, and that FIRREA did not authorize the creation of any federal common law with respect to the rights of a receiver. The Court also held that even if FIRREA were not applicable, this was not one of those extraordinary cases in which the judicial creation of a federal rule of decision was warranted. The Supreme Court remanded the case to the Ninth Circuit for a determination of whether California law estopped a receiver from making a claim that would not be available to the corporation because the wrongdoers' knowledge was imputed to the corporation.

On remand, the Ninth Circuit considered whether the FDIC had any rights or defenses not available to the entity it replaced as a result of California law. *FDIC v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir.1995). The Ninth Circuit concluded that the FDIC was not barred by certain equitable defenses that the law firm defendants could have raised against the failed S & L. Referring to California case law, the court found there are exceptions to the general rules that a receiver occupies no better position than that which was occupied by the person for whom he acts and that any defense good against the original party is good against the receiver. One exception is that "defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver." *Id.* at 18–19 (citing *Camerer v. California Sav. & Commercial Bank*, 4 Cal.2d 159, 48 P.2d 39, 44–45 (1935)). The Court further stated:

> While a party may itself be denied a right or defense on account of its misdeeds, *there is little reason to impose the same punishment on a trustee,* receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law. . . . As we noted in our earlier opinion:
>
>> A receiver, *like a bankruptcy trustee* and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes.

*O'Melveny & Myers,* 61 F.3d at 18–20 (emphasis added). The Ninth Circuit concluded

that the equities are different when a receiver is involved, such that equitable defenses good against the wrongdoer should not be available against the receiver.

Similar reasoning is found in the recent Seventh Circuit case of *Scholes v. Lehmann,* 56 F.3d at 750, where the court held the defense of *in pari delicto* could not be used against an Illinois receiver. The court stated: "the defense of *in pari delicto* loses its sting when the person who was *in pari delicto* is eliminated." *Id.* at 754. The reason for holding the entity in receivership bound by the acts of the bad management is gone once the receiver has been appointed. In vivid language, the court explained:

> The appointment of the receiver removed the wrongdoer from the scene. The corporations were no longer Douglas's evil zombies. Freed from his spell they became entitled to the return of the moneys—for the benefit not of Douglas but of innocent investors—that Douglas had made the corporations divert to unauthorized purposes.

*Id.*

Is there any reason why the rationale of the Ninth Circuit in *O'Melveny* on remand and the Seventh Circuit in *Scholes* shouldn't apply to the trustee here? A trustee in bankruptcy has a role similar to the FDIC in *O'Melveny* and the Illinois receiver in *Scholes,* and a trustee in bankruptcy should be in no worse position than a state or federal receiver. Indeed, the courts in both those cases analogized their receivers to trustees in bankruptcy. However, in *O'Melveny,* the Court referenced California law and in *Scholes* the court referenced an Illinois case. As we know from the Supreme Court decision in *O'Melveny,* the application of the equitable defense depends on state law. The parties here have not briefed the State law of Georgia, New Jersey, or Florida (whichever may apply) on the critical issue of whether a receiver collecting assets for the benefit of creditors can be held *in pari delicto* as to the wrongful acts of the entity in receivership. It would be imprudent for the Court to decide this issue without briefs from the parties both on the state law and the significance of *O'Melveny* to this case.

The law cited by the defendants on this issue is not helpful. They cite two cases for the general proposition that the trustee is subject to the same defenses as the debtor when it asserts a debtor's cause of action. These cases, however, did not involve *in pari delicto,* questions of imputability, or the invocation of any equitable defense. *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3rd Cir.1989) (trustee bound by arbitration clause in debtor's prepetition contract); *Boyajian v. DeFusco (In re Giorgio),* 862 F.2d 933 (1st Cir.1988) (trustee bound by a state supreme court judgment that debtors waived usury defense). The Accountant Defendants then cite *E.F. Hutton* and *Williams* for the proposition that the doctrine of *in pari delicto* should bar the trustee's claims, but the discussion of *in pari delicto* in these cases is limited and is only *dicta.* Neither case held that the *in pari delicto* doctrine would apply to bar a trustee from asserting claims. Neither case analyzes the state law issues as required by the Supreme Court in *O'Melveny.* Both cases simply note that in pari delicto *may* exist between the debtor and the wrongdoer so as to allow a claim of subrogation against the estate. Here, the trustee is suing on behalf of the debtor, not creditors, and there is no danger of defendants becoming subrogated to the rights of creditors against the debtor. *See Drabkin,* 168 B.R. at 6. Finally, defendants' reliance on *CEPA Consulting, Ltd. v. Main Hurdman (In re Wedtech Corp.),* 138 B.R. 5 (S.D.N.Y.1992), is also misplaced. This case was decided before *O'Melveny* and the opinion does not address whether imputation defenses were applicable under state law to a receiver.

The Court concludes that the trustee has standing to assert the claims, but the trustee will have an opportunity to refine and clarify the elements of damages. As to the defendants' *in pari delicto* argument, counsel will need to supplement the record and brief additional issues identified above. A briefing schedule will be established by a separate Order.

IT IS SO ORDERED.