

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2003

# In re Personal Bus

Precedential or Non-Precedential: Precedential

Docket No. 02-1192

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"In re Personal Bus " (2003). *2003 Decisions.* Paper 399.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/399

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 26, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1192

———————

IN RE: THE PERSONAL AND BUSINESS INSURANCE
AGENCY,
*Debtor*

JAMES K. MCNAMARA, ESQ., TRUSTEE,
*Appellant*

v.

PFS a/k/a PREMIUM FINANCING SPECIALISTS

———————

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil No. 01-cv-0092E)
District Judge: Honorable Sean J. McLaughlin

———————

Argued February 24, 2003

Before: BECKER, *Chief Judge*,* SCIRICA, *Circuit Judge***
and SHADUR,*** *District Judge*.

(Filed: June 26, 2003)

———————

———————

* Judge Becker completed his term as Chief Judge on May 4, 2003.

** Judge Scirica succeeded to the position of Chief Judge on May 4, 2003.

*** Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

LAWRENCE C. BOLLA (Argued)
KENNETH W. WARGO
Quinn, Buseck, Leemhuis, Toohey &
 Kroto, Inc.
2222 West Grandview Boulevard
Erie, PA 16506

*Attorneys for Appellants*

RICHARD A. LANZILLO (Argued)
MARK G. CLAYPOOL
Knox McLauglin Gornall & Sennett
120 West Tenth Street
Erie, PA 16501

*Attorneys for Appellee*

---

## OPINION OF THE COURT

---

BECKER, *Circuit Judge.*

This appeal from an order of the District Court affirming the Bankruptcy Court's dismissal of a fraudulent conveyance claim brought against Premium Finance Specialists ("PFS") on behalf of the debtor, The Personal & Business Insurance Agency ("PBI"), by the bankruptcy trustee, James K. McNamara (the "Trustee"), poses the question whether a court may consider post-bankruptcy petition events, in this case the appointment of the Trustee, in evaluating a claim brought under § 548 of the Bankruptcy Code.

PBI was used as a pawn in an illegal scheme perpetrated by its CEO and sole owner, Emil Kesselring, who caused PBI to make payments totaling $580,000 to PFS in putative repayment for loans that Kesselring had fraudulently obtained from PFS. The Trustee now seeks to recover those funds, arguing that the payments were a fraudulent conveyance under § 548 of the Code. The District Court determined that despite the fact that Kesselring's actions were adverse to PBI's interests, under the "sole actor exception" detailed in *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 359-60 (3d

Cir. 2001), Kesselring's fraud must be imputed to PBI because he was its sole representative. On this basis, the District Court reasoned that PBI owed PFS a debt, that the payments made to PFS were made in partial satisfaction of that debt, and therefore that PBI received a reasonably equivalent value for these payments, meaning that the transfers to PFS were neither constructively nor actually fraudulent.

The Trustee responds that even if Kesselring's fraud was properly imputed to PBI pre-petition, it cannot be imputed to the Trustee, who is bringing this claim on behalf of innocent creditors. He asserts that we must consider his claim in light of a post-petition event, namely his appointment as Trustee in place of the "bad actor" Kesselring, in determining whether the transfers were fraudulent under § 548. The Trustee urges that when we take his appointment into account, the imputation of Kesselring's fraud to PBI would lead to an inequitable result — loss to innocent creditors. He cites persuasive caselaw which holds that the invocation of the doctrine of imputation against a trustee should not be allowed when a bad actor has been removed and the defense is serving only to bar the claims of an innocent successor.

We find nothing in the language of § 548 that prevents a court from considering post-petition events, and so we may consider PBI's claim in light of the appointment of the Trustee. Because we agree that imputing Kesselring's fraud (and his debt) to the Trustee would lead to an inequitable result, we conclude that Kesselring's fraudulent acts (and the debts he incurred) cannot be imputed to the Trustee, and therefore that the District Court erred in affirming the Bankruptcy Court's dismissal of the Trustee's fraudulent conveyance claim. We will therefore reverse the judgment of the District Court and remand the matter for further proceedings.

## I.

The Debtor, PBI, was an insurance brokerage firm in the business of obtaining coverage for trucking companies and their cargo by placing such coverage with various insurers.

Between March 1997 and November 1998, Kesselring, the sole owner and chief executive officer of PBI, took advantage of PBI's operating procedures to use the company in an illegal money-making scheme. As a standard part of its business, PBI would sometimes obtain for its clients financing for the insurance premium payments necessary to secure coverage. PFS was one of two financing companies that PBI used for this purpose. Usually, when a client requested financing, PBI would prepare an application and Kesselring would either sign the application on behalf of the client, or obtain the client's signature by delivering it a copy of the application. PBI would then send the application to PFS (or the other finance company) for approval. Upon such approval, PFS would arrange to bill the borrower. PFS would transmit the loan monies to PBI by wire transfer or check and, normally, PBI would then transfer the funds, less its commission, to the insurer.

Beginning in March 1997, Kesselring began to take advantage of this established procedure as a way to illegally obtain funds for himself. He prepared false applications for finance company loans in the name of actual PBI clients or fictitious entities, either forging the borrower's signature or signing as the borrower's agent/broker. He then submitted the applications to PFS and obtained the loan proceeds. Rather than paying for insurance coverage with these funds, however, Kesselring pocketed the money. To avoid detection, Kesselring caused PBI to make payments on the fraudulent loans using PBI funds. Kesselring made a total of $580,000 in such payments to PFS.

Kesselring's malfeasance was nonetheless uncovered and he was indicted by a grand jury for mail and wire fraud. In August 1999, PBI's Chapter 7 bankruptcy trustee, James McNamara, filed a complaint against PFS, seeking to recover the funds Kesselring had transferred to PFS pursuant to his illegal scheme. The Trustee then filed an amended complaint, alleging a claim for fraudulent conveyance under 11 U.S.C. § 548 and the Pennsylvania Uniform Fraudulent Conveyance Act, 12 Pa. C.S.A. § 5104 *et seq.*, and a second amended complaint, which added a claim of preference. PFS filed an answer to the second

amended complaint and then moved to dismiss the fraudulent conveyance count of the second amended complaint. The Bankruptcy Court granted this motion on October 24, 2000. The Trustee voluntarily dismissed the preference count of the second amended complaint, resulting in a dismissal of the action. The Trustee appealed the Bankruptcy Court's decision to the District Court, which affirmed, and he now appeals to this Court.

The District Court had jurisdiction pursuant to 28 U.S.C. §158 (a)(1), based on an appeal from the final order of the Bankruptcy Court. This Court has jurisdiction under 28 U.S.C. §158(d) and 28 U.S.C. §1291. Our review of an appeal from the grant of a motion to dismiss under Bankruptcy Rule 7012(b)(6), the equivalent of Fed. R. Civ. P. 12(b)(6), is plenary. *Meridian Bank v. Allen*, 958 F. 2d 1226, 1229 (3d Cir. 1992). To affirm the dismissal of a complaint under rule 12(b)(6), we take all well-pleaded allegations as true and construe the complaint in the light most favorable to plaintiff. *Estate of Bailey Orr v. County*, 768 F.2d 503, 506 (3d Cir. 1985).

## II.

Under § 548 of the Bankruptcy Code, a conveyance is fraudulent, and therefore avoidable, if it involved either "actual" or "constructive" fraud.[1] Actual fraud occurs when

---

1. § 548 reads, in pertinent part:

   (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily —

   (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

   (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

   The language of the Pennsylvania Uniform Fraudulent Conveyance Act, under which PBI also brought suit, mirrors that of the Code.

the debtor makes the transfer with the intent to hinder, delay, or defraud creditors, and constructive fraud occurs when the debtor receives less than a reasonably equivalent value for a transfer and either is insolvent at the time of transfer, or becomes insolvent because of it. The Bankruptcy Court determined that the transfers in question in this case were neither actually nor constructively fraudulent because they were made in repayment of a debt owed to PFS. The District Court agreed and rejected the Trustee's argument that Kesselring's fraudulent conduct cannot be imputed to the corporation and that the debt was Kesselring's alone. In rejecting this argument, the District Court was guided by the analysis laid out in *Waslow v. Grant Thornton L.L.P. (In re Jack Greenberg, Inc.)*, in which the Court held that:

> "the fraud of an officer of a corporation is imputed to the corporation when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation. This is true even if the officer's conduct was unauthorized, effected for his own benefit but clothed with apparent authority of the corporation, or contrary to instructions. The underlying reason is that a corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business."

212 B.R. 76, 83 (Bankr. E.D. Pa. 1997) (quoting *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 884 (3d Cir. 1976)).

The District Court correctly found that the first prong of this test was satisfied because Kesselring committed the fraud in the course of his employment; applying for loans from PFS was part of Kesselring's standard work at PBI. The second prong proved more difficult, however. Under what is known as the "adverse interest exception," "fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and 'not for the benefit of the corporation.'" *Lafferty*, 267 F.3d at 359 (citations omitted). This exception applied to the situation at hand, as Kesselring's illegal actions redounded only to

his own benefit, not to the corporation's. There is however, an exception to this exception, which states that:

> [I]f an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests. The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability.

*Id.*

The District Court determined that this "sole actor" exception applied because Kesselring was the sole representative of PBI in the alleged fraudulent scheme. On the basis of this determination, the Court concluded that the transfers of money from PBI to PFS were not constructively fraudulent because the corporation, through Kesselring's imputed conduct, received a reasonably equivalent value for them (the loan proceeds disbursed by PFS to PBI and appropriated by Kesselring), and therefore the transfers were made in payment of an antecedent debt. The Court further held that there was no actual fraud here as the " 'badges of fraud,' the most significant of which include the adequacy of the consideration . . .," were not present. Specifically, the Court explained that "after having determined that Kesselring's alleged fraud is imputable to the Debtor corporation, we have little difficulty concluding that the transfers made in repayment of this debt were given for adequate consideration."

III.

A.

As it did before the District Court, PFS argues that the Trustee's fraudulent conveyance claim was properly dismissed because PBI transferred the $580,000 in question in payment of an antecedent debt owed to PFS. PFS advances two theories for how this debt was created.

First, it argues that PFS transferred the loan monies directly to PBI's general checking account, not to Kesselring, and therefore PBI was responsible for using the funds appropriately and for making repayment to PFS. We cannot agree. To the extent that PBI held the loan monies, it did so only as a conduit; Kesselring appropriated the monies for his own uses and PBI exercised no control over them. Therefore, PBI's transitory possession of the loan funds did not create a debt owed to PFS.[2]

PFS next asserts that even if the transfer of funds to the PBI account did not create a debt, the District Court was correct in holding that, on the basis of the "sole actor" exception, Kesselring's fraud, and therefore his debt, must be imputed to PBI, thereby creating a debt owed to PFS. The Trustee responds that even if Kesselring's fraud may be imputable to PBI, it is not imputable to the Trustee, who is now bringing this claim. In making this contention, the Trustee must confront our decision in *Lafferty*, which held that the fraud of a corporation's owners must be imputed to an Official Committee of Unsecured Creditors bringing a claim under § 541 of the Bankruptcy Code.

## B.

*Lafferty* arose out of the bankruptcy of two lease financing companies that were allegedly involved in a

---

2. We therefore disagree with the Bankruptcy Court, which concluded that the transfer of money into the PBI account created a debt to PFS, reasoning that PBI:

> had an obligation to forward the loan proceeds (less the Debtor's commission) to the insurance carriers or, if the insurance was not placed or otherwise canceled, to return the loan proceeds to Premium Finance. Thus, when the Debtor received the loan proceeds, it had an obligation to Premium Finance.

*McNamara v. Premium Finance Specialists (In re the Personal and Business Insurance Agency, Inc.)*, Bankr. No. 99-10585, Adv. No. 99-1090, slip op. at 7 (Bankr. W.D. Pa. 2001).

The District Court also appears to have rejected the Bankruptcy Court's reasoning, determining instead that PBI's debt to PFS was created through the imputation of Kesselring's fraud to PBI.

"Ponzi" scheme. The Official Committee of Unsecured Creditors brought suit on behalf of the debtor corporations against, *inter alia*, the corporations' counsel, accountant, and underwriters (one of which was Lafferty), claiming that these third parties had fraudulently induced the corporations to issue debt securities, thereby deepening their insolvency and forcing them into bankruptcy. The complaint alleged that these parties had conspired with the debtors' managers, who were also the debtors' sole shareholders, to perpetrate the Ponzi scheme. The District Court held that the suit against the third parties was barred by the doctrine of *in pari delicto*, which provides that a "plaintiff who has participated in wrongdoing may not recover damages from the wrongdoing," *Black's Law Dictionary* (7th ed. 1999), because the debtors, acting through their sole shareholders, the Shapiro family, had helped perpetrate the scheme.

On appeal, this Court addressed the key question whether the fraud committed by the corporations' owners must be imputed to a Committee in bankruptcy.[3] The Committee, citing to *In re Jack Greenberg*, argued that a court may disallow an *in pari delicto* defense when its invocation would create an inequitable result. It urged that this was just such a case, because the Committee was an "innocent successor" and represented the corporations' creditors, not the wrongdoers. The Committee urged that the facts that the companies had declared bankruptcy and that the "bad actors" (the Shapiros) had been removed meant that only the innocent creditors would benefit from the suit, hence applying *in pari delicto* would lead to an inequitable result.

In analyzing the Committee's claim, the panel determined that it raised two issues: (1) "whether, when evaluating a claim brought by a bankruptcy trustee, a court of law may consider post-petition events that may affect an equitable defense, such as *in pari delicto*"; and (2) whether, in light of the answer to question (1), the Shapiro family's conduct should be imputed to the debtors so that *in pari delicto*

_____

3. By the time the case was heard by this Court, Lafferty was the only remaining defendant and sole appellee.

barred the Committee's claims. *Id.* at 355. In deciding the first question, the panel began by noting that the application of *in pari delicto* in this particular case was controlled by the rules governing bankruptcy. The bankruptcy laws authorized the Committee to take one of two types of actions in pursuing the bankruptcy: one type is " 'brought by the trustee as successor to the debtor's interest included in the estate under Section 541,' " while the second type is " 'brought under one or more of the trustee's avoiding powers.' " *Id.* at 356 (quoting 3 *Collier on Bankruptcy* ¶ 323.03[2] (15th Rev. Ed. 2001)).

The Committee chose to bring its claim under Section 541, which states that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement" of bankruptcy. The panel explained that "these legal and equitable interests include causes of action" and that:

> [g]iven these provisions, we have held that "in actions brought by the trustee as successor to the debtor's interest under section 541, the 'trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely,] [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.' "

*Id.* (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir. 1989)). The Court concluded that "the explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy" and that therefore it was barred from considering the Committee's status as an innocent successor by the "plain language" of § 541. *Id.* at 356-57.

## C.

As we have explained above, the Trustee submits that we must consider his claim in light of a post-petition event, namely his appointment as Trustee in place of the "bad actor" Kesselring, in determining whether the transfers were fraudulent under § 548. This Court's ability to take

the Trustee's appointment into account is the pivotal issue in this case because the Trustee comes to us with clean hands, whereas pre-petition, PBI bore the taint of Kesselring's fraud and therefore could not successfully have brought a fraudulent conveyance claim. We therefore confront two questions: (1) does *Lafferty* prohibit consideration of post-petition events in the adjudication of § 548 claims, and (2) if not, should a court in fact consider such events in ruling on these claims?

The Trustee argues that *Lafferty* cannot control our decision here because the Committee in *Lafferty* brought suit under § 541, which specifically bars consideration of events that occurred after the commencement of the bankruptcy, while the Trustee is bringing suit under § 548, which has no such language. This argument has merit. The *Lafferty* Court made clear that its holding did not extend to actions brought under Code sections other than § 541, and it specifically stated that the "trustee's 'avoiding' powers are not implicated here, as they relate to the trustee's power to resist pre-bankruptcy transfers of property." *Id.* at 356. In addition, the panel distinguished cases in the receivership context, in which courts had declined to apply *in pari delicto* on the ground that the application of the doctrine to an innocent successor would be inequitable, solely by relying on the text of § 541: "unlike bankruptcy trustees, receivers are not subject to the limits of section 541." *Id.* at 358.

We therefore agree with the Trustee that *Lafferty* does not extend to the situation at bar because the Trustee is acting under § 548 rather than § 541. This does not, however, end our inquiry, for the fact that *Lafferty* does not control here does not settle the question whether a court may consider post-petition events, in this case the appointment of the Trustee, in actions based on a trustee's avoiding powers.

As the Trustee points out, there are strong equitable arguments that favor courts' consideration of post-petition events. A number of courts have applied these arguments in concluding that the defense of *in pari delicto* should not be applied when a bad actor has been removed and the defense is serving only to bar the claims of an innocent successor. For example, in *In re Jack Greenberg*, discussed

*supra*, the Bankruptcy Court for the Eastern District of Pennsylvania observed that:

> The refusal of Pennsylvania's highest court in *Universal Builders* to allow the invocation of the equitable defense of unclean hands against a bankruptcy trustee when its application would produce an inequitable result (*i.e.*, application of the defense would result in harm to innocent third parties) convinces me that there are circumstances when the trustee's position as plaintiff is different from that of the corporation, even when bringing the corporation's claim. Accordingly, while the true and oft stated maxim that a trustee standing in the shoes of the corporation takes no greater rights than the debtor is certainly the beginning of my analysis, my inquiry does not end there. I perceive that under Pennsylvania law equitable defenses such as the doctrine of imputation that may be sustainable against the corporation may fail to act as a total bar to recovery when the beneficiaries of the action are the corporation's innocent creditors. . . .

240 B.R. at 505-06. Likewise, in *Scholes v. Lehmann*, 56 F. 3d 750, 754 (7th Cir. 1995), the Court noted that "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." Similar equitable considerations apply here as the bad actor, Kesselring, has been eliminated and the Trustee comes to us with clean hands, representing the interests of innocent creditors. If the doctrine of imputation were applied to bar PBI's recovery, that application would lead to an inequitable result (loss to innocent creditors).

We agree that "under Pennsylvania law equitable defenses such as the doctrine of imputation that may be sustainable against the corporation may fail to act as a total bar to recovery when the beneficiaries of the action are the corporation's innocent creditors," and find that the same logic applies to suits brought under § 548 of the Code, and we therefore conclude that we may take the appointment of the Trustee into account when evaluating his fraudulent conveyance claim.[4] *In re Jack Greenberg,* 240

---

4. PBI brought its fraudulent conveyance claim under both the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S.A. § 5104. *et seq.*, and § 548 of the Code.

B.R. at 506. There is no limiting language in § 548 similar to that in § 541, and without that language there is no reason not to follow the better rule, under which Kesselring's conduct would not be imputed to the Trustee because it would lead to an inequitable result in this case.

## D.

In sum, nothing in the language of § 548 precludes us from considering the replacement of Kesselring by the Trustee and the concomitant removal of the taint of Kesselring's fraud from PBI, and we hold that Kesselring's conduct will not be imputed to the Trustee. In that event, the Trustee had no "antecedent debt," and consequently no value was received for the payments made by PBI to PFS. The District Court's order granting the motion to dismiss will therefore be vacated and the matter remanded to the District Court, which we assume will remand the matter to the Bankruptcy Court for further proceedings consistent with this opinion.

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*