### In re FUZION TECHNOLOGIES GROUP, INC., et al., Debtor.

Marika Tolz, Trustee, as Chapter 7 Trustee of the bankruptcy estates of Fuzion Technologies Group, Inc. and Fuzion Wireless Communications, Inc., Plaintiff,

v.

Proskauer Rose LLP, Defendant.

Bankruptcy No. 01–28967–BKC–RBR. Adversary No. 03–2198–BKC–RBR–A.

United States Bankruptcy Court, S.D. Florida.

March 2, 2005.

Bart Alan Houston, Ft. Lauderdale, FL, for Debtor.

**ORDER DENYING PROSKAUER ROSE LLP'S MOTION FOR SUMMARY JUDGMENT ON THE *IN PARI DELICTO* DEFENSE**

RAYMOND B. RAY, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on Tuesday, November 30,

2004. The Court has heard the argument of counsel for the respective parties, has considered the record in this cause and the memoranda filed therein, and is otherwise fully advised. The Court finds as follows.

**Background**

Fuzion Technologies Group, Inc. and Fuzion Wireless Communications, Inc. (collectively "Fuzion") filed for Chapter 11 protection on December 7, 2001. Fuzion Wireless Communications, Inc. was formed in March 1999. In September 1999, Fuzion Technologies Group, Inc. became the holding company for Fuzion Wireless Communications, Inc. During its existence, Fuzion created and operated regional broadband wireless networks in the United States, Canada and Panama.

At Fuzion's inception, the directors were Gary Boyce ("Boyce") and David Frank ("Frank"). Boyce was the Chairman and Chief Executive Officer and was responsible for raising and managing the finances of Fuzion. Capital Investment Group, Inc. ("CIG") is a company owned and controlled by Boyce. In addition, Boyce owned or controlled the following entities including, Capital Group Investment, Inc., Investment Capital Group, Inc., Capital Aviation Group, Inc., Capital Three Aviation, Inc., and Infinity Investment International, Inc. (collectively the "Boyce Companies").

Fuzion's president, David Frank, had an engineering background and developed a potential wireless communication network, which ultimately became Fuzion's technology. Frank had no money, had no experience raising money, and could not find any investors. In 1999, he met Boyce, an experienced fundraiser who promised to raise millions to get the company off the ground. Boyce took 50 percent of the stock of the company, gave Frank the balance.

From its inception in 1999, Fuzion was dominated and controlled by Boyce. Boyce used his position as a majority stockholder, chairman and chief executive officer to misappropriate millions of dollars from Fuzion.[1]

At various times, Fuzion engaged several accounting firms to audit its financial statements. McGladrey & Pullen was engaged from January 1, 2000 through June 2000. From August 2000 through November 2000, Fuzion engaged Adair Fuller Witcher & Malcolm. Then, in November 2000, Rachlin Cohen & Holtz ("RCH") was engaged to audit Fuzion's financial statements. RCH worked on the audit until approximately March 2001. Despite months of trying to confirm, non of the accountants could confirm that Boyce or his company held millions of Fuzion's funds.

On June 15, 2000 Larry Schone ("Schone") and Walter Mortimer ("Mortimer"), two directors of Fuzion and, respectively, its in-house counsel and chief financial officer, sent a notice to each of the other members of Fuzion's board of directors requesting a meeting to discuss key issues involving CIG. Immediately thereafter, Schone and Mortimer were informed that they were removed as directors of Fuzion. On June 21, 2000 Schone and Mortimer sent a letter to Fuzion's remaining board members, which were Boyce, Frank, Bruce Godwin ("Godwin"), and Felix Maduro ("Maduro"), setting forth certain facts, discovered in connection with a pending audit, which they had intended to bring to the board's attention (the "Whistle Blower Letter"). The

---

1. The Trustee has obtained a final judgment against Boyce in excess of $75 million. ADV. Proc. No. 03–6606–BKC–RBR–A (C.P.19).

Whistle Blower Letter contained details concerning transfers of funds from Fuzion to CIG and therefore Boyce without the knowledge or authorization of the board, including dates and amounts.

On June 27, 2000 defendant Proskauer Rose LLP ("Proskauer") was engaged by Fuzion to provide general corporate representation and to assist Fuzion with the placement of its securities. Proskauer also represented Fuzion in connection with the termination of Schone's employment agreement as well as a claim by Mortimer for wrongful termination. Proskauer provided other services to Fuzion, including preparing a Reg S document to be used to raise additional funds from investors, conducting due diligence, responding to claims raised by a group of potential investors who maintained that they were defrauded by Boyce, and advising the company in connection with an offer for rescission of sales of stock allegedly made in violation of the securities laws.

In the summer of 2001 it was discovered that Fuzion's bills were not being paid. An analysis of Fuzion's financial records revealed that Boyce had transferred millions of dollars to CIG. After repeated demands to Boyce to return the money failed, the other three members of the board of directors, Maduro, Godwin, and Frank, called an emergency meeting on September 11, 2001. At this meeting they: retained new counsel, opened a new bank account over which Boyce had no signatory authority; directed Boyce to instruct CIG and all of his other affiliated companies holding Fuzion funds to immediately transfer all such funds to Fuzion's new operating account; rescinded Boyce's check-writing authority, took corrective measures to establish a clean banking environment; terminated Boyce's relationship with Fuzion as an officer and director; and sealed his office pending legal review of his activi-

ties. At that time the board believed CIG still was holding approximately $30 million of Fuzion's money.

In early October 2001 it was discovered that Boyce had diverted millions of dollars of Fuzion's money to himself, his family members, and companies owned and controlled by them. The Trustee claims that Proskauer was negligent in its representation of the company because it failed to render appropriate advice concerning the Whistle Blower Letter. The Trustee claims that, had the board members learned of Boyce's activities in July 2000, they immediately would have acted as they did on September 11, 2001, thereby preventing Boyce from looting an additional $25 million dollars after July 2000.

Fuzion filed for Chapter 11 protection on December 7, 2001. On March 26, 2002, the case was converted to Chapter 7 and Marika Tolz was appointed as Trustee. On March 20, 2003, Trustee Marika Tolz ("Trustee" or "Plaintiff") initiated the present adversary proceeding by filing a complaint ("Complaint") against defendant Proskauer Rose LLP ("Proskauer" or "Defendant"). In January 2003, the Trustee settled her claims of negligence and breaches of fiduciary duty against all of Fuzion's officers and directors (except as to fraudulent transfers). This Court approved the settlement, through which Zurich American Insurance Company, Fuzion's directors' and officers' liability carrier, paid the Trustee $1.8 million out of a $2 million policy.

*Proskauer admits for purposes of this motion that it was negligent* but seeks to avoid liability for its negligence under the doctrine of *in pari delicto* on grounds that Boyce's knowledge of his own thievery must be imputed to the Trustee, thereby barring her from pursuing her claims. For the reasons stated below, Proskauer's motion for summary judgment is denied.

## ANALYSIS

■■■ An analysis of equitable defenses, such as in pari delicto does not include an analysis of standing.[2] "Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms."[3]

■■■ As for standing, several bankruptcy courts have recognized the Trustee's standing to bring such actions.[4] Standing stems from injury to the debtor, now represented by the trustee.[5] This Court rejects the Second Circuit's Wagoner rule and its progeny, where "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."[6] The Wagoner court reasoned that because "a class of creditors had suffered harm, the corporation itself had not."[7] The Wagoner court ignores the fact that the corporation is a creature of law conferred with standing to sue and to be sued in its own corporate name for injuries to the corporate entity and that the corporation itself can in fact be harmed. "[A] corporation can suffer an injury unto itself, and any claim it asserts to recover for that injury is independent and separate from the claims of shareholders, creditors, and others. We think it is irrelevant that, in bankruptcy, a successfully prosecuted cause of action leads to an inflow of money to the estate that will immediately flow out again to repay creditors."[8]

■■ The Trustee claims that Fuzion suffered great financial loss as a corporate entity due to the negligence of Proskauer. The trustee is now the representative of Fuzion. As such, the Court finds that Trustee Tolz has standing to bring this claim. The Court's analysis will now turn to whether the claim is barred by the *in pari delicto* defense.

■■■ *In pari delicto* is a common law rule, an equitable principle and defense, that prevents a plaintiff who has participated in the wrongdoing from recovering damages resulting from the wrongdoing.[9] Normally, under agency principles, if the plaintiff acted wrongfully through an agent in the scope of that agency relationship, then the wrongdoing of the agent is attributed to the plaintiff.

2. *See generally* Jeffrey Davis, *Ending the Nonsense: the In Pari Delicto Doctrine Has Nothing to Do with What is Section 541 Property of the Bankruptcy Estate*, 21 Emory Bankr.Dev. J. ___ (2005); Gerald L. Baldwin, *In Pari Delicto Should Not Bar a Trustee's Recovery*, 23–8 Am. Bankr.Inst. J. 8 (2004); Tanvir Alam, *Fraudulent Advisors Exploit Confusion in The Bankruptcy Code: How In Pari Delicto Has Been Perverted To Prevent Recovery for Innocent Creditors*, 77 Am. Bank. L.J. 305 (2003); Robert T. Kugler, *The Role of Imputation and In Pari Delicto in Barring Claims Against Third Parties*, 1 No. 14 Andrews Bankr.Litig. Rep. 13 (2004); *Making Sense of the In Pari Delicto Defense: "Who's Zoomin' Who?"* 23 No. 11 Bankruptcy Law Letter 1 (Nov.2003).

3. *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346–47 (3d Cir.2001) citing *In re Dublin Secs., Inc.*, 133 F.3d 377, 380 (6th Cir.1997) (analyzing in pari delicto separately from standing).

4. *See Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377 (6th Cir.1997); *Sender v. Buchanan (In re Hedged–Investments Assocs., Inc.)*, 84 F.3d 1281 (10th Cir.1996).

5. *See R.F. Lafferty & Co.*, 267 F.3d at 347 (internal citations omitted).

6. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir.1991).

7. *Id.*

8. *R.F. Lafferty & Co.*, 267 F.3d at 348–49.

9. Black's Law Dictionary 806 (8th ed.2004); *Terlecky*, 133 F.3d at 380.

■ However, under the adverse interest exception to the *in pari delicto* defense, when an agent is acting adversely to the interest of the principal, the knowledge and conduct of the agent are no longer imputed to the principal unless the principal benefitted from the wrongdoing.[10] But, the sole actor exception, the exception to the exception, may nevertheless favor imputation of the agent's wrongdoing to the principal. One court stated:

> [t]he general principle of the "sole actor" exception provides that, if an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests. The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability.[11]

Nevertheless, the plaintiff may defeat the sole actor exception that imputes the wrongdoing to the plaintiff by showing that there was someone "involved in [debtor's] management who was ignorant of the ongoing fraud and could and would if advised of facts known to defendant have taken steps to bring the fraudulent conduct to an end." [12]

■ As explained by the court in *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340 (3d Cir.2001), pursuant to 11 U.S.C. § 541, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of bankruptcy. These legal and equitable interests include causes of action." [13] In *R.F. Lafferty,* the court held that by the plain language of Section 541, Congress intended to limit a bankruptcy trustee to bringing only those claims that the debtor could have brought at the time it filed bankruptcy, and to subject the trustee to the same defenses to which the debtor would have been subject:

> [t]he explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy. This direction is entirely consistent with the legislative history. The Senate Report to the Bankruptcy Reform Act of 1978 made clear that the appropriate frame of reference for section 541 is the state of the debtor as of the commencement of the bankruptcy:
>
> > Though [section 541] will include choses [sic] in action and claims by the debtor against others, *it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.* For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred. He could take no greater rights than the debtor himself had (emphasis added).[14]

However looking at other parts of the legislative history of the bankruptcy code, in describing the final amendments that

---

10. *Wight v. BankAmerica Corp.,* 219 F.3d 79, 87 (2d Cir.2000)

11. *R.F. Lafferty & Co.,* 267 F.3d at 359 (internal citations omitted).

12. *Breeden v. Kirkpatrick & Lockhart,* 268 B.R. 704, 710 (S.D.N.Y.2001).

13. 267 F.3d at 356 (internal quotations and citations omitted).

14. *R.F. Lafferty,* 267 F.3d at 356 (citations omitted).

conformed the House and Senate bills, Mr. Edwards of California stated: [15]

> [A]s section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate *except to the extent that defenses which are personal against the debtor are not effective against the estate.* (Emphasis added.)

In *R.F. Lafferty* the court explained that "the explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy." [16] Nevertheless, bankruptcy courts have frequently considered postpetition acts in applying the Bankruptcy Code. For instance, the Third Circuit, in *McNamara v. PFS (In re Personal & Bus. Ins. Agency)*, stated that the postpetition removal of fraudulent managers can be considered to overcome the *in pari delicto* defense under section 548 of the Bankruptcy Code.[17] The court went on to explain that "[t]here is no limiting language in § 548 similar to that in § 541, and without that language there is no reason not to follow the better rule, under which . . . [the wrongdoer's] conduct would not be imputed to the Trustee because it would lead to an inequitable result in this case." [18]

Similarly, the Second Circuit, in *In re Leasing Consultants, Inc.*, has held that

the *in pari delicto* defense can be disregarded when the trustee brings an action under what is now section 544(b).[19] The court stated that *in pari delicto* "denies judicial relief, in the form of either enforcement or rescission, to parties to illegal contracts. However, this principle is based not on solicitude for the defendant, but on concern for the public welfare, and thus when application of the doctrine would not be in the public interest, the courts will permit recovery." [20] Likewise, in *In re Porter McLeod*, the court did not apply the *in pari delicto* defense to the claims being brought by the chapter 7 trustee under section 544(a) against third party advisors of the debtor.[21]

Hence, courts have found that the *in pari delicto* defense is inapplicable when a trustee brings an action under sections 544(a), 544(b), or 548, but the defense applies under section 541. Essentially, courts under sections 544(a), 544(b), and 548 may consider postpetition circumstances but not under section 541. The dissent in *R.F. Lafferty* highlights the fact that post bankruptcy acts were also considered in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), where the Supreme Court allowed "a trustee . . . [to] claim as property of the estate a tax loss-carryback refund for a taxable year that ended post-petition." [22] The Supreme Court reasoned that the refund was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered

---

15. 124 CONG. REC. H11,1096 (daily ed., Sept 28, 1978); 124 CONG REC H 32383, Vol. 124 Part 24.

16. *R.F. Lafferty & Co.*, 267 F.3d at 356.

17. *McNamara v. PFS (In re Personal & Bus. Ins. Agency)*, 334 F.3d 239, 246 (3d Cir.2003).

18. *Id.* at 246–47.

19. *In re Leasing Consultants, Inc.*, 592 F.2d 103 (2d Cir.1979).

20. *Id.* at 110.

21. *PM Denver, Inc. v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786, 793–95 (D.Colo. 1999).

22. *R.F. Lafferty & Co.*, 267 F.3d at 363 (Cowen, J. dissenting).

fresh start that it should be regarded as 'property.' "[23] Therefore the dissent in *R.F. Lafferty* argues that "[s]o too in this case the losses suffered by the debtor corporation all took place before the bankruptcy and the only obstacle to the corporations' recovery is the removal of the . . . [wrongdoers], an event as inevitable as that completion of the taxable year in *Segal.*"[24]

Hence, to prevent inequitable results, post bankruptcy acts were taken into account throughout the Bankruptcy Code, including section 541. The Court in *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), explained

> [T]he wrongdoer must not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors. That reason falls out now that Douglas has been ousted from control of and beneficial interest in the corporations. The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's evil zombies. Freed from his spell they became entitled to the return of the moneys—for the benefit not of Douglas but of innocent investors—that Douglas had made the corporations divert to unauthorized purposes. Put differently, the defense of in pari delicto loses its sting when the person who is in pari delicto is eliminated"[25]

■■■■■ *In pari delicto* is not an absolute standard to be applied across the board regardless of the circumstances. It is an equitable defense.[26] The dissenters in *R.F. Lafferty* wrote:

> [The court held that] because the officers were still in control at the moment the petition was filed, in pari delicto still erected a bar at that moment. There are a number of problems with this reasoning. The first and most obvious is that, whatever the inflexibility is of the bankruptcy code, an equitable doctrine like in pari delicto is highly sensitive to the facts and readily adapted to achieve equitable results. What is sufficient to satisfy the doctrine, in other words, need not be parsed like a statute.[27]

The doctrine of *in pari delicto* is based on concern for the public welfare. When application of the defense would not be in the public interest, the courts will permit recovery by the plaintiff—even one who engaged in improper conduct. In holding that the defense cannot be invoked to defeat a claim under the antitrust laws, the United States Supreme Court said:

> We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purpose. * * * The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.[28]

23. *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

24. *R.F. Lafferty & Co.*, 267 F.3d at 363 (Cowen, J. dissenting).

25. *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir.1995).

26. See *R.F. Lafferty & Co.*, 267 F.3d at 354; *Waslow v. Grant Thornton LLP (In re Jack Greenberg, Inc.)*, 240 B.R. 486, 501 (Bankr. E.D.Pa.1999).

27. *R.F. Lafferty & Co.*, 267 F.3d at 362 (Cowen, J. dissenting).

28. *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

The philosophy is the same under Florida law. According to the court in *Kulla v. E.F. Hutton & Company, Inc.*, 426 So.2d 1055 (Fla. 3rd DCA 1983),

> The defense of *in pari delicto* is not woodenly applied in every case where illegality appears somewhere in the transaction; since the principle is founded on public policy, it may give way to a supervening public policy.
>
> "The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered.[29]

An important public purpose is served by the Trustee in this case—marshaling the assets of the estate and distributing them to the creditors who suffered losses.[30]

■ Under 11 U.S.C. § 704(a)(1) the Trustee is charged with the duty of marshaling the assets of the estate, and winding up the estate expeditiously and in the best interests of parties in interest. Section 105(a) empowers this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Trustee is the last good person who can help the creditors and ensure that the loss is borne by those who caused it and not by innocent people.

■ Applying the Supreme Court's reasoning in *Perma Llfe*, permitting defendants such as Proskauer to raise the *in pari delicto* defense as a barrier to relief by bankruptcy trustees would thwart the important public purpose served by the framework of the bankruptcy code. Re-

jection of the defense is even more compelling where there is no risk that the wrongdoer will reap the reward of any damages recovered by a trustee. If the Supreme Court did not deem it inequitable for an antitrust plaintiff with unclean hands to reap a treble damage windfall, then this Court does not consider it unfair to permit a bankruptcy trustee to recover funds from third parties for the benefit of innocent creditors free from the taint of the former officer's wrongful behavior. This Court is of the opinion that an order precluding Proskauer from using the *in pari delicto* defense as a shield to the Trustee's claims would enable the Trustee to carry out the provisions of sections 704 and 726, and would advance the public policy underlying the bankruptcy code.

■ State law applies in determining what defenses may be asserted against the Trustee in this adversary proceeding.[31] At least one Florida court has ruled that the defense may not necessarily be invoked against a receiver. Analyzing Florida common law, the court in *Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543 (Fla. 2nd DCA 2003) observed:

> Although a receiver receives his or her claims from the entities in receivership, a receiver does not always inherit the sins of his predecessors. Under certain circumstances, defenses such as unclean hands do not apply against a receiver when they would have applied against the entity that was placed into receivership. [citation omitted] We are inclined to believe that the receiver may also

---

**29.** *Id.* at 1057 n. 1.

**30.** *See, e.g., Drabkin v. L & L Construction Associates, Inc. (In re Latin Investment Corporation)*, 168 B.R. 1, 4 (Bankr.D.D.C. 1993)("Any policy reasons outside bankruptcy for taking pains to bar shareholders from recovery, including imputing their knowledge

to the corporation, do not support limiting the ability of a trustee in bankruptcy to liquidate the debtor's assets.")

**31.** *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 84, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994); *Lafferty*, 267 F.3d at 358.

pursue certain claims that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership.[32]

■ The applicability of the defense to a bankruptcy trustee still has not been adjudicated by a Florida state court. The only opinion interpreting Florida law is by Judge Nesbitt in *Welt v. Sirmans*, 3 F.Supp.2d 1396 (S.D.Fla.1997), a legal malpractice action by a bankruptcy trustee against the debtor's former attorneys. Following the rationale underlying *Seidman & Seidman v. Gee*, 625 So.2d 1 (Fla. 3d DCA 1992), Judge Nesbitt held:

> Applying the two-pronged tort liability analysis espoused in both *Cenco [Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.1982)] and *Schact[ v. Brown*, 711 F.2d 1343 (1983)]*, this Court finds that any recovery by the Trustee would serve to properly compensate the victims of the wrongdoing and deter future wrongdoing. With respect to the first factor, any recovery by the Trustee from the instant suit would not benefit [the debtor], but rather the creditors of [the debtor]. 11 U.S.C. § 726. [footnote omitted] Clearly, [the wrongdoer] will not benefit from any judgment that the Trustee achieves against [the attorneys]. Second, as to the deterrence factor, "permitting recovery in this case would not send unqualified signals to shareholders that they need not be alert to managerial fraud since they may later recover full indemnification for that fraud from third party participants." [33]

Proskauer asserts that Judge Nesbitt's reasoning is flawed in its application of receivership cases to a bankruptcy trustee because, under 11 U.S.C. § 541, a bankruptcy trustee inherits the causes of action possessed by the debtor on the day bankruptcy proceedings were instituted, including all defenses that could have been raised against the debtor. Proskauer maintains that a receiver is not so constricted by the bankruptcy statute. For all intents and purposes, this is a distinction without a difference. The rights conferred upon a receiver are the same as those prescribed by section 541.

In *Freeman v. Dean Witter*, 865 So.2d 543, the court appointed a receiver for a company that operated a Ponzi scheme. The receiver brought an action against certain third parties, including the company's former attorneys, to recover damages to be distributed to the company's customers. The appellate court's description of the receiver's rights is similar to the language of 11 U.S.C. § 541(a)(1): "It is axiomatic that Mr. Freeman as a receiver obtained the rights of action and remedies that were possessed by the person or corporation in receivership." [34]

Other courts addressing the issue draw a parallel between receivers and trustees. For example, on remand from the Supreme Court in *O'Melveny*, the Ninth Circuit reasoned:

> While a party may itself be denied a right or defense on account of its mis-

---

**32.** 865 So.2d at 550.

**33.** 3 F.Supp.2d at 1402–1403. While this Court is not bound to follow the reasoning of Judge Nesbitt in *Welt*, her decision is entitled to deference by this Court. *See, e.g., Waslow v. Grant Thornton LLP*, 240 B.R. 486, 511.

**34.** 865 So.2d at 550. *See also O'Neal v. General Motors Corp.*, 841 F.Supp. 391, 398

(M.D.Fla.1993)(the general rule in Florida is that a receiver takes the rights, causes of action, and remedies of the corporation for which he was appointed as receiver). 11 U.S.C. § 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."

deeds, there is little reason to impose the same punishment on a *trustee*, receiver, or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law. Moreover, when a party is denied a defense under such circumstances, the opposing party enjoys a windfall. This is justifiable as against the wrongdoer himself, not against the wrongdoer's innocent creditors. As we noted in our earlier opinion: "A receiver, *like a bankruptcy trustee* and unlike a normal successor in interest, does not voluntarily step into the shoes of the [debtor]; it is thrust into those shoes." [35]

Shortly thereafter, the court in *In re Plaza Mortg. and Finance Corp.*, 187 B.R. 37 (Bankr.N.D.Ga.1995) questioned:

> Is there any reason why the rationale of the Ninth Circuit in *O'Melveny* on remand and the Seventh Circuit in *Scholes* shouldn't apply to the trustee here? A trustee in bankruptcy has a role similar to the FDIC in *O'Melveny* and the Illinois receiver in *Scholes,* and a trustee in bankruptcy should be in no worse position than a state or federal receiver. Indeed, the courts in both those cases analogized their receivers to trustees in bankruptcy.[36]

Similarly, in bankruptcy cases there are safeguards in place to ensure that recovery by trustees will go to the creditors; not to the wrongdoers. This Court does not deem it equitable for negligent third parties to enjoy a windfall by gaining absolu-tion from liability for their negligence while the innocent creditors bear the loss.

Under the foregoing analysis, the Court finds that, as a matter of law, the *in pari delicto* defense does not apply to the bankruptcy trustee.

■ But, even if the *in pari delicto* defense applied to bankruptcy trustees, the defense remains unavailable to Proskauer under the facts established by the evidence. The adverse interest exception to the imputation rule precludes Mr. Boyce's knowledge from being imputed to the Trustee if he was acting solely for his own benefit and was looting Fuzion of its operating funds.[37]

The leading case in Florida on the imputation doctrine is *Seidman & Seidman v. Gee,* 625 So.2d 1 (Fla. 3d DCA 1992), an accounting malpractice case filed by the company's liquidator. The court in *Gee* drew a distinction between cases where the wrongdoing was designed to benefit the corporation and those where, as here, the wrongdoer looted assets to the detriment of the company.[38] In the former cases, the wrongful conduct is imputed to the corporation; in the latter it is not.[39] In holding that the complaint should have been dismissed, the court deemed it "a critical fact that [the wrongdoer's] fraudulent acts were committed for the benefit of the corporation." [40] On rehearing the liquidator argued that his claims should not have been barred because he was not merely standing in the shoes of the corporation but was representing the interests of the creditors and the public.[41] The

---

35. *Federal Deposit Insurance Corporation v. O'Melveny & Myers,* 61 F.3d 17, 19 (9th Cir. 1995) (emphasis added).

36. 187 B.R. at 46.

37. *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.,* 144 F.3d 732 (11th Cir.1998); *McHale v. Huff (In re Huff),* 109 B.R. 506 (Bankr.S.D.Fla.1989).

38. *Id.* at 3.

39. *Id.*

40. *Id.*

41. *Id.* at 4.

court refused to consider the issue because it had not been raised by the parties below, but said that it did not reject the argument.[42]

■ Proskauer argues that Fuzion benefitted through its receipt of some of the money raised from investors. Proskauer's argument presumes that the wrongdoing alleged by the Trustee is fraud in connection with the sale of securities. However, any such claim would belong to the investors and can not be pursued by the Trustee.[43]

The fraudulent activity forming the basis of this matter is Mr. Boyce's subsequent looting of Fuzion's money *after* it was raised from investors. The evidence shows that Fuzion conducted a legitimate business. The evidence further shows that Mr. Boyce acted with the improper purpose of enriching himself, his family members, and their companies without consideration for whether his actions were in the best interest of Fuzion or its creditors.[44] The evidence also shows that the misconduct of Mr. Boyce did not benefit Fuzion but instead destroyed the company and caused damage to Fuzion, the bankruptcy estates, and consequently to the creditors.

Proskauer acknowledges not only that Fuzion had operations and customers, but also that Mr. Boyce stole funds and was acting for his own benefit. The fraud occurred after the money was raised when Mr. Boyce embezzled funds from Fuzion,

presenting a classic case of adverse interest under Florida law, *Seidman & Seidman v. Gee,* 625 So.2d 1, as well as under all of the cases relied upon by Proskauer. The debtors derived no benefit whatsoever from the theft of their operating funds.

Based on those facts, the adverse interest exception to the imputation rule applies in this case.[45] Therefore, Mr. Boyce's intentional misconduct cannot be imputed to Fuzion, and there is no relative degree of fault on the Plaintiff's side to offset Proskauer's negligence and gross negligence.

Proskauer attempts to invoke the sole actor exception to the adverse interest exception, relying primarily on *Dublin Securities,* 133 F.3d 377; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407 (7th Cir.1988); *Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. 704 (S.D.N.Y.2001); *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147 (2nd Cir.2003); *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 359 (3rd Cir.2001); and *Banco Industrial de Venezuela, C.A. v. Credit Suisse,* 99 F.3d 1045 (11th Cir. 1996).

In all of the opinions where the sole actor exception was applied, the sole agent either was the only shareholder, or had no one to whom he could impart his knowl-

---

42. *Id.*

43. *See, e.g., Dublin Securities, Inc. v. Hurd,* 133 F.3d 377 (6th Cir.1997); *Drabkin v. L & L Construction,* 168 B.R. 1 ("But what the trustee is suing on, is what happened after the monies were deposited. This involved theft from, and looting of, the debtor. It did not benefit the debtor in any way, but only defendants and the debtor's principals." *Id.* at 5).

44. Indeed, this Court entered a judgment against Mr. Boyce for treble damages of

$76,914,810. *Tolz v. Boyce,* Adv. No. 03–6606–BKC–RBR–A, court paper # 19. *See also* Order Denying Defendants' Motion to Set Aside Default and Vacate Default Final Judgment, court paper # 92.

45. *Beck,* 144 F.3d at 737; *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 117 F.3d 1328, 1338–39 (11th Cir.1997), *reh. denied,* 136 F.3d 143 (11th Cir.1998).

edge, or from whom he could conceal it.[46]

The Trustee contends Proskauer cannot avail itself of the sole actor exception because certain directors and shareholders involved in the corporation were "ignorant of the ongoing fraud and could and would if advised of facts known to defendant have taken steps to bring the fraudulent conduct to an end." [47]

In *Freeman*, it was undisputed that the company was owned and controlled by the operators of the Ponzi scheme.[48] Mr. Freeman did not allege that there was an honest person within the corporation to whom the attorneys could have imparted their advice.[49] The trial court dismissed the complaint with prejudice on grounds that Mr. Freeman was *in pari delicto* with the wrongdoers.[50] On appeal the court analyzed the legal precedent adjudicating the issue and found that "the case law on this subject is not entirely clear, and no single case is dispositive." [51] The court distinguished between a corporation that had at least one honest director or innocent shareholder and a corporate entity that was nothing but an instrument of fraud:

> The distinction between an honest corporation with rogue employees, which can pursue claims for the fraud or intentional torts of third parties wile in receivership, and a sham corporation created as the centerpiece of a Ponzi scheme, which cannot pursue such claims is both a legal and a practical distinction.[52]

The Eleventh Circuit has indicated in *O'Halloran v. First Union National Bank of Fla.,* 350 F.3d 1197, 1203 n. 4 (11th Cir.2003) that the presence of an innocent insider may enable a bankruptcy trustee to pursue claims in the face of an *in pari delicto* defense.

In *Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Company, Inc.),* 247 B.R. 341 (Bankr.S.D.N.Y.2000), *aff'd in part and rev'd in part,* 311 B.R. 350 (S.D.N.Y.2004), the court ruled:

> However, a corporation whose management was involved in an accounting fraud is not barred from asserting claims for professional malpractice in not detecting the fraud provided the corporation had at lest one decision-maker in management or among its stockholders who was innocent of the fraud and could have stopped it. [citations omitted] Here, as demonstrated in the findings of fact, [the debtor's] 48% shareholder...was innocent of the fraud, and one of its representatives on [the debtor's] board of directors,...testified that had he known of the fraud, he would have taken steps to stop it. It therefore follows that the wrongdoing on the part of

**46.** *Lafferty,* 267 F.3d at 359; *In re Mediators, Inc.,* 105 F.3d 822 (2nd Cir.1997)(a sole shareholder who looted the corporation's assets); *FDIC v. Ernst & Young,* 967 F.2d 166 (5th Cir.1992); *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407 (7th Cir.1988)(summary judgment was reversed with directions to resolve material factual issues as to whether the wrongdoer was a sole actor whose knowledge should be imputed to the plaintiff despite the adversity of interests between agent and principal).

**47.** *Breeden,* 268 B.R. at 710, quoting *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld,*

LLP, 212 B.R. 34, 36 (S.D.N.Y.1997). *See also Waslow v. Grant Thornton (In re Jack Greenberg, Inc.),* 212 B.R. at 86.

**48.** 865 So.2d at 547.

**49.** *Id.*

**50.** 865 So.2d at 548.

**51.** *Id.* at 550.

**52.** 865 So.2d at 552.

[the debtor's] management is not imputable to [the debtor] itself.[53]

The appellate court agreed that the sole actor exception only applies if the agent is identical to the corporation, for example, the sole shareholder.[54]

All of the cases, including those relied upon by Proskauer, prohibit imputation of a sole actor's conduct to a corporation (and consequently to its bankruptcy trustee) if there was at least one honest officer, director, shareholder, or other insider who would have taken appropriate action to rectify the wrongdoing. The Court now will examine the facts of this case to determine whether there was such a person associated with Fuzion.

The uncontroverted evidence in this case is that there were innocent board members who could have terminated Mr. Boyce's wrongdoing had his misconduct been uncovered in June 2000 and, more importantly, *did* terminate Mr. Boyce's criminal activities when they discovered the true facts a year later. The evidence shows that, when they finally realized that Mr. Boyce did not intend to transfer the money from CIG, Fuzion's board of directors (David Frank, Bruce Godwin, and Felix Maduro, the same directors who sought Proskauer's advice concerning the Whistle Blower Letter in June 2000) called an emergency meeting on September 11, 2001 and took immediate action to effectuate a cessation of Mr. Boyce's involvement with Fuzion. The board retained new counsel and terminated Mr. Boyce's relationship with Fuzion as an officer and director.

Proskauer maintains that the three directors had financial motivation not to delve into the activities of Mr. Boyce in June 2000. As to Felix Maduro, Proskauer argues—but has not proved—that there was something suspicious in Mr. Maduro's receipt of a $500,000 payment that ultimately was returned before Fuzion filed for bankruptcy protection. The evidence also shows, however, that Mr. Maduro had over $1 million of his own money invested in Fuzion, and his relatives and friends in Panama had invested over $4 million dollars. Mr. Maduro therefore had greater motivation to stop Mr. Boyce's thefts and protect his investment and those of the others who invested as a result of his involvement.

Proskauer claims that Bruce Godwin was motivated by a gift of Fuzion stock not to question Gary Boyce. Again, Mr. Godwin's stock would have been worth much more had Fuzion recovered the stolen funds, obtained an audit opinion, and proceeded with its public offering.

Proskauer asserts that Mr. Frank closed his eyes to Mr Boyce's wrongful activities because he wanted to maintain the salary he was receiving from Fuzion. Mr. Frank was more likely to retain his salary and the value of his stock if Mr. Boyce's looting were discovered and stopped before Fuzion's operating funds were dissipated.

Proskauer maintains that no one challenged Boyce because everyone was afraid of him. Proskauer presented the court with a video of deposition excerpts that, when viewed in a vacuum, appeared impressive. The entirety of the testimony and documentary evidence reviewed by the

---

53. 247 B.R. at 364–65.

54. 311 B.R. at 373. *See also Smith v. Arthur Andersen LLP,* 175 F.Supp.2d 1180, 1200 (D.Ariz.2001)(the *Wagoner* rule and *in pari delicto* doctrine did not apply where there was "an innocent member . . . of management who would have been able to prevent the

fraud had he known about it." *Id.* at 1199, citing *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP,* 212 B.R. 34, 36 (S.D.N.Y. 1997)); *In re Sharp International Corp. v. KPMG LLP,* 278 B.R. 28 (Bankr.E.D.N.Y. 2002).

Court shows, however, that everyone trusted Boyce and believed that he was the successful, honest businessman he held himself out to be.

The evidence shows that, had Proskauer completely and accurately evaluated the comments in the Whistle Blower Letter and advised the board to conduct a further investigation, the board could have discovered over a year earlier the facts brought to light by the forensic accountants' examination of Capital Investment Group's records in October 2001. The Court finds that, given those details, the members of Fuzion's board of directors could have acted in June 2000 as they did on September 11, 2001 when they still believed that Gary Boyce merely was refusing to turn over the $30 million that CIG still was holding in trust for the company

Thus, the evidence establishes that there may be innocent insiders who could and would have ceased the fraudulent conduct had it been brought to their attention

The evidence supports the adverse interest exception to the imputation rule and does not support the sole actor exception to the exception. Therefore, Proskauer's *in pari delicto* defense does not bar the Trustee's claims for negligence and gross negligence under the facts of this case.

Based upon the foregoing, it is

**ORDERED AND ADJUDGED** that Proskauer Rose LLP's Motion for Summary Judgment on the *in pari delicto* defense is **DENIED**.